UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

DIANE LAWLESS.,                                    *
                                                   *
        Plaintiff,                                 *
                                                   *
        v.                                         *        Civil Action No. 18-cv-11089-IT
                                                   *
TOWN OF FREETOWN, by and through                   *
its Treasurer/Collector, JESSICA                   *
THOMAS, PAUL SADECK, individually                  *
and in his official capacity as member of          *
the Board of Selectmen, LEE                        *
BAUMGARTNER, individually and in his               *
official capacity as member of the Board           *
of Selectmen, and LISA A. PACHECO,                 *
individually and in her official capacity as       *
member of the Board of Selectmen,                  *
                                                   *
        Defendants.                                *

MEMORANDUM & ORDER

March 9, 2021

TALWANI, D.J.

        Plaintiff Diane Lawless, a former municipal employee, brought this action against the

town of Freetown ("Freetown" or "town") and the three members of its Board of Selectmen

(collectively, "Board members") in their individual and official capacities. In her Amended

Complaint [#42], Lawless alleges libel against the Board members (Count I); violation of her due

process rights under 42 U.S.C. § 1983 ("section 1983") (Count II) and the Massachusetts

Declaration of Rights (Count III) against Freetown and the Board members; ultra vires acts

against Freetown and the Board members (Count IV); and breach of contract against Freetown

(Count V). Now pending before the court is Freetown and the Board members' joint Motion for

Summary Judgment [#93]. For the following reasons, the motion is DENIED as to the section

1983 claim (Count II) and the breach of contract claim (Count V) and is GRANTED as to all other claims.

## I.        Standard of Review

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material when, under the governing substantive law, it could affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Baker v. St. Paul Travelers, Inc., 670 F.3d 119, 125 (1st Cir. 2012). A dispute is genuine if a reasonable jury could return a verdict for the non-moving party. Anderson, 477 U.S. at 248.

The moving party bears the initial burden of establishing the absence of a genuine dispute of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). This burden can be satisfied in two ways: (1) by submitting affirmative evidence that negates an essential element of the non-moving party's claim or (2) by demonstrating that the non-moving party failed to establish an essential element of its claim. Id. at 331.

Once the moving party establishes the absence of a genuine dispute of material fact, the burden shifts to the non-moving party to set forth facts demonstrating that a genuine dispute of material fact remains. Id. at 314.  The non-moving party cannot oppose a properly supported summary judgment motion by "rest[ing] on mere allegations or denials of [the] pleadings." Anderson, 477 U.S. at 256. Rather, the non-moving party must "go beyond the pleadings and by [his or] her own affidavits, or by 'the depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). Disputes over facts "that are irrelevant or unnecessary" will not preclude summary judgment. Anderson, 477 U.S. at 248.

2

When reviewing a motion for summary judgment, the court must take all properly supported evidence in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor. Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990). "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, [when] he [or she] is ruling on a motion for summary judgment." Anderson, 477 U.S. at 255.

## II.    Factual Background

### A.    The Defendants

Freetown is a Massachusetts town that operates with a town meeting form of government. Plaintiff's Response to Defendants' Statement of Undisputed Material Facts ("Pl's SOF Resp.") ¶ 9 [#107]. Town meeting acts as Freetown's legislative body,[1] while the executive branch consists of an elected Board of Selectmen ("Board") together with a Town Administrator. Id. at ¶¶ 9-11; Freetown Charter 1-8 [#95-11]. At the time of the events at issue in this case, Paul Sadek, Lee Baumgartner, and Lisa Pacheco comprised the Board. Pl's SOF Resp. ¶¶ 2-4 [#107]; Sadek Aff. [#95-5]; Baumgartner Aff. [#95-6]; Pacheco Aff. [#95-7]. Pacheco served as the Board's chair of personnel. Pl's SOF Resp. ¶ 46 [#107].

### B.    The Plaintiff and the Terms of her Employment

In June 2013, the Board appointed Lawless as Freetown's "Treasurer/Collector" ("Treasurer") for a three-year term running from July 1, 2013 to June 20, 2016. Pl's SOF Resp.

---

[1] In a town meeting form of government, a town meeting is both an event and an entity. As an event, it denotes a gathering of the town's eligible voters and is referred to as "the town meeting." As an entity, it is the legislative body and is referred to simply as "town meeting." For example, an eligible voter might attend a town meeting, and town meeting might vote to approve the budget. See Sec'y of the Commonwealth, Citizen's Guide to Town Meetings (March 9, 2008), https://www.sec.state.ma.us/cis/cispdf/Guide_to_Town_Meetings.pdf.

3

¶¶ 1, 17-18 [#107]. According to the job posting for the position, "[t]he Treasurer-Collector shall have such powers and duties as may be vested in those offices expressly by general or special law, but shall otherwise report to and be under the direction and supervision of the Town Administrator." Disciplinary Hrg. Exhibits 29 [#95-16].

Lawless' employment agreement stated that the Board agreed to employ Lawless as Treasurer "to perform all required functions and duties of the position . . . as required by State Law and/or Town By-laws or the Board." Employment Agreement 1 [#95-4]. The agreement provided that she was to work a minimum of thirty-six hours per week, to be scheduled Monday through Friday, and that she would be available to the town at all times, except during periods of illness or approved vacation or other leave. Id.

In addition, the agreement specified that, after an initial six-month probationary period, Lawless was terminable only for cause. Id. It further provided that the Board was required to give Lawless written notice of the grounds for discipline or dismissal at least five days prior to any vote to terminate her employment; that any such vote would take place at a meeting of the Board at which Lawless had the right to be represented by an attorney, to examine witnesses, and to present evidence; and that the Board recognized the principle of progressive discipline and would afford Lawless prior notice of shortcomings and an opportunity to correct the same, where reasonably possible. Id. at 1-2.

Lawless served as treasurer for two years, until her termination in June 2015, discussed further below. Pl's SOF Resp. ¶¶ 149-51 [#107].

    C.    *Lockbox Contract*

Shortly after her appointment as Treasurer, Lawless implemented a "Lockbox" program to help Freetown process its tax payments. Id. at ¶ 19.[2] She signed a contract with a local financial institution on November 25, 2013. Lockbox Agreement [#95-14].

    D.    *Cheryl Estrella's Complaints to the Town Administrator and His March 2014 Notices to Lawless*

Cheryl Estrella, who at the time was the senior clerk in the Treasurer's office and was Lawless' subordinate, began complaining about Lawless to Town Administrator Richard Brown[3] in February 2014. Pl's SOF Resp. ¶ 5 [#107]; Plaintiff's Statement of Undisputed Facts ("Pl's SOF") ¶ 51 [#110]. At some point, Estrella complained to Brown that Lawless had allowed her husband to come into the office for extended periods of time. Estrella Dep. 84-85 [#109-15]. In response, in March 2014, Brown directed Lawless via email to cease allowing her husband to be present in her office. Disciplinary Hrg. Exhibits 31 [#95-16]. Later that month, Brown sent Lawless another email instructing her that transfers of payments to Lockbox needed Board approval. Id. at 32. Brown took no further action regarding these matters. Pl's SOF ¶ 51 [#110].

Brown also told Estrella that she should not complain to him every time she had a disagreement with Lawless. Id. Estrella then made complaints about Lawless directly to Sadeck and Baumgartner. Id. at ¶ 52.

---

[2] A Lockbox is a third-party collection and processing service provided by a financial institution to accelerate the flow of funds to the treasury. Under the service, payments made by taxpayers are directed to a special post office box instead of going to the town. The financial institution then retrieves the payments, processes them, and deposits the fund directly into the town's bank account. See Lockbox Contract [#95-14].

[3] Brown was the Town Administrator when Lawless was hired in June 2013 and remained in that position until some point during the summer of 2014. Healey Dep. 36 [#109-11].

E.     *April 2, 2014 Executive Session*

On April 2, 2014, the Board held an executive session, attended by the Sadeck, Pacheco, Baumgartner, and Town Counsel.[4] Apr. 2, 2014 Exec. Session Minutes [#95-17]. During this executive session, Sadeck stated that, while paying his tax bill, he noticed that a Lockbox program had been implemented despite the program not having been authorized by the Board. Id. Baumgartner raised a concern about Lawless' husband having been in her office. Id. Sadeck said that he had also received a report that Lawless had behaved unprofessionally toward another town employee. Id. Baumgartner then said that he did not trust Lawless, and Pacheco and Sadeck agreed. Id. Pacheco suggested that the Board hold a disciplinary hearing, and Sadeck stated that Lawless was appointed, not elected, and that "is the end of story." Id. Town Counsel responded that the Board could not hold a disciplinary hearing until Lawless had been given a directive about her behavior and then violated it. Id. At the end of the executive session, the Board voted to hold an executive session with Lawless to discuss these issues. Id.

F.     *April 15, 2014 Executive Session*

That executive session was held on April 15, 2014. Apr. 15, 2014 Exec. Session Minutes [#95-19]. Lawless was present with her attorney, and Brown and Town Counsel were also in attendance. Id. Sadeck confronted Lawless about implementing Lockbox without Board approval and asked whether she had signed a contract with a bank. Id. Lawless responded that she had filled out forms but did not know whether there was a contract. Id. Sadeck also said that he believed Lawless to have provided incorrect information to a newspaper in response to a public

---

[4] Under the Massachusetts open meeting law, G. L. c. 30A, §§ 18-25, all meetings of public bodies must be open to the public. However, certain topics may be discussed in executive, or closed, session, including "the discipline or dismissal of, or complaints or charges brought against, a public officer, employee, staff member or individual." Id. § 21.

records request. Id. Lawless, through her attorney, responded that she had never previously been made aware of this issue. Id.

Next, Sadeck expressed his concerns about Lawless' husband having been in her office and having access to sensitive town records. Id. Lawless stated that her husband had, on several occasions, come to pick her up and spent a few minutes in the office while waiting for her to wrap up her work, but that she had never given him access to town meetings or records. Id. Sadeck also said that Lawless had incorrectly filled in her timesheet and noted that she was not entitled to compensatory time and that she needed to inform the Town Administrator in advance if she intended to work on weekends. Id. Finally, Sadeck raised an issue concerning paycheck distribution and stated that he would not tolerate Lawless "thr[owing] her employee under the bus" for her mistakes. Id.

After Lawless had left the executive session, the Board voted to send her a letter recapping the meeting and providing her with directives as to her future conduct but reserving further inquiry regarding the Lockbox issue. Id. In response to Sadeck's question of where they would go from there, Baumgartner stated that he would "never get past the trust thing" and expressed his belief that Lawless "was not truthful" with the Board. Id. The Board sent Lawless a letter on April 22, 2014, directing her to keep her hours "consistent with the regular hours that Town Hall is open"; to notify the Town Administrator if she needed to work beyond normal hours or planned to be absent from work; to schedule her vacation in advance with the Board; to seek approval of the Board before implementing any changes to town business, policies, or procedures; to behave courteously toward citizens and other town employees; and not to allow her husband or other personal visitors into her office at any time. Apr. 24, 2014 Letter [#95-20].

The letter advised Lawless that failure to comply with the expectations and directives in the letter could result in disciplinary action, including possible termination. Id.

G.   *Approval of the Lockbox Contract*

At some point prior to July 2014, the Board ratified the Lockbox contract. Jun. 8 Hrg. Tr. 86 [#95-9]; Healey Dep. 38 [#109-11].

H.   *Jack Healey becomes Town Administrator*

Jack Healey became the Town Administrator at some point during the summer of 2014. Healey Dep. 36 [#109-11]. He was not advised until an executive session in November 2014 of any concerns regarding Lawless. Pl's SOF ¶ 61 [#110].

I.   *November 17, 2014 Executive Session*

The Board held an executive session with Healey on November 17, 2014, to address the fact that Healey had given Lawless the password to Estrella's computer. Nov. 17, 2014 Exec. Session Minutes [#95-21]. Healey apologized, and Pacheco said that she did not want Healey to be taken advantage of. Id. She went on to say that the Board did not trust Lawless, and Baumgartner said that, in his opinion, Lawless "should be gone." Id.

J.   *Conflict with Jessica Thomas*

On January 26, 2015, Jessica Thomas replaced Estrella as the senior clerk in the Treasurer's office. Pl's SOF Resp. ¶¶ 5-6, 53 [#107]; Jun. 8 Hrg. Tr. 19-20 [#95-9]. Shortly after Thomas started, Lawless instructed her not to speak about her work with Estrella (who had moved to the Town Clerk's office) or Christine Jussaume, the assistant tax collector. Pl's SOF Resp. ¶ 54 [#107].

On March 24, 2015, Lawless asked Thomas to organize certain tax payments. Id. at ¶ 55. Thomas began to sort them but was stopped by Lawless, who wanted them organized a different way. Id. at ¶ 56. At that point Jussaume came into the office, and Thomas asked her how the

payments should be sorted. Id. at ¶ 57. This led to a conflict between Thomas and Lawless, which culminated in Thomas crying and going to the Town Administrator's office to report Lawless' conduct, with Lawless following behind her. Id. at ¶¶ 58-61.

When Thomas and Lawless reached the Town Administrator's office, Healey was not there. Id. at ¶ 62. Ali Golz, the Board's administrative assistant, called Sadeck, who spoke with both Thomas and Lawless over the phone. Id. Sadeck asked Golz to call Pacheco, who oversaw personnel matters, to let her know what had happened. Id. at ¶¶ 62-63. Pacheco instructed Golz to tell Lawless to go home and not to come into the Town Hall the next day. Id. at ¶¶ 63-64.

Lawless returned to her office. Id. at ¶ 65. Early the next morning, on March 25, 2015, she came into the Town Hall and downloaded confidential files onto flash drives. Id. Upon learning that Lawless was in the Town Hall, Healey called her and told her to leave the building immediately. Id. at ¶ 66. Lawless complied but took the flash drives with her. Id. at ¶ 67.

K.    *Administrative Leave*

The following day, Healey placed Lawless on paid administrative leave "pending review of recent events." Notice of Admin. Leave [#96-3]. The notice stated that, during the period of her administrative leave, she was not to perform any of the duties of her position or take any action on behalf of the town, unless directed to do so by the Town Administrator or the Chair of the Board. Id. The notice also specified that Lawless was being placed on leave because of Thomas' complaint against her and because, despite being instructed on March 24, 2015, not to report to work the next day, she had returned to the office on March 25, 2014 and had copied town files onto a flash drive without authorization. Id. Finally, the notice requested that Lawless immediately return the flash drives and not make copies of the data contained on them. Id.

While Lawless was on leave, Healey asked her to turn over the town's bank and financial software passwords to enable the town to perform its financial obligations. Pl's SOF Resp. ¶ 80

[#107]. Lawless refused to do so, stating that this was to protect the town because, by statute, only a town's bonded treasurer may bank on behalf of the town. Id. at ¶ 82; see also G. L. c. 41, § 35. Lawless conducted bank transfers and processed payroll at Healey's direction during her administrative leave. Pl's SOF Resp. ¶ 84 [#107].

      L.    *Solicited Complaints Against Lawless*

At some point shortly after the incident between Lawless and Thomas, Pacheco solicited written submissions from certain Freetown employees regarding their working relationships with Lawless. Pl's SOF Resp. ¶ 70 [#107]. Thomas and Jussaume submitted letters to the Board on March 31, 2015, and Estrella sent a lengthy email to Pacheco, Healey, and Golz on April 3, 2015. Disciplinary Hrg. Exhibits 43-53 [#95-16].

      M.    *April 7, 2015 Executive Session*

In an executive session on April 7, 2015, the Board discussed their concerns about Lawless and what action to take going forward. Apr. 7, 2015 Exec. Session Minutes [#96-4]. Town Counsel noted the absence of a discipline history and advised the Board that the town typically would put a performance improvement plan in place for four to five months or try to negotiate a separation agreement. Id. Pacheco stated that she had already told Lawless to stop making decisions without Board input and not coming in on off days and that Lawless had not complied. Id. Town Counsel then noted that, if the Board had had these concerns for such a long time, the response from Lawless would be to ask why the Board had waited so long to take any action. Id. Baumgartner said that Lawless had lied to the Board at two open meetings, and Sadeck stated that his major issue was her interpersonal skills. Id. Pacheco asserted that she thought they had cause for termination. Id. The Board members proceeded to discuss various issues, including the steps for hiring an interim Treasurer. Id. At the end of the meeting, the Board voted to hold a "termination hearing" for Lawless. Id.

Following that meeting, on April 10, 2015, Healey sent Lawless another letter continuing her administrative leave. Renewed Notice of Admin. Leave [#96-5]. The notice also requested that she turn over any equipment issued to her by the town and informed her that on April 29, 2015, the Board would meet to vote to hold an executive session to hear charges made against her. Id.

N.      *April 29, 2015 Executive Session*

The meeting notice for the April 29, 2015 executive session was posted on April 27, 2015 and stated that the purpose of the meeting would be "to hear complaints or charges against Diane Lawless as an employee of the Town of Freetown." Disciplinary Hrg. Exhibits 12 [#95-16]. At Lawless' request, the meeting was held in open session rather than executive session. Apr. 29, 2015 Open Session Minutes [#96-6]. However, no hearing of complaints or charges took place at that time. Id. Rather, after a brief procedural discussion, the Board unanimously voted to execute a notice of disciplinary hearing, which had been previously drafted by Town Counsel and presented to the Board. Id.

The next day, on April 30, 2015, Baumgartner sent Lawless the notice of disciplinary hearing. Notice of Disciplinary Hrg. [#96-7]. The notice outlined eight charges against Lawless: (1) that she had behaved unprofessionally toward town employees, citizens, and vendors; (2) that she had refused to turn over the bank passwords over to Healey; (3) that, in 2014, she had misled the Board regarding the implementation of the Lockbox program; (4) that after being placed on administrative leave, she had downloaded confidential town files onto flash drives and (5) returned to the Town Hall despite instructions to remain home; (6) that she had improperly disposed of town real estate records in September 2014; (7) that she had taken vacation in June 2014 without advising the Board; and (8) that she had failed to provide information to a town insurance vendor in June 2014. Id.

O.    *Disciplinary Hearing*

The disciplinary hearing was held over three days, on June 8, June 12, and June 22, 2015. Jun. 8 Hrg. Tr. [#95-9]; Jun. 12 Hrg. Tr. [#95-13]; Jun. 22 Hrg. Tr. [#96]. Lawless, who was represented by counsel, waived her right to have the hearing held in executive session and agreed that it would be held in open session. Jun. 8 Hrg. Tr. 2 [#95-9]. At the beginning of the first day of the hearing, Lawless and her counsel were advised that, after the town had presented its evidence, Lawless would have the opportunity to call her own witnesses and to present her own evidence. Id. at 4-6. Lawless and her counsel were also provided with copies of the exhibits that that Freetown intended to use to support the charges against Lawless, including the letters from Thomas and Jussaume and the email from Estrella.[5] Id. at 10-17.

Town Counsel called Thomas as the first witness, and she testified that Lawless had prohibited her from speaking to other town employees about her work and that Lawless had mistreated Jussaume. Id. at 16, 22-27. Thomas also recounted the events of March 24, 2015, which had led up to Lawless' placement on administrative leave. Id. at 29-41.

Next, Healey testified that Lawless' performance as Treasurer had been "very good" but that she had had interpersonal issues with other town employees. Id. at 68-69. He stated that, upon learning that Lawless was in the Town Hall on March 25, 2015, after having been instructed not to come in, he called her and told her to leave the building. Id. at 71. He also said that he had been informed by the town's IT personnel that, on the night of March 24, 2015, as

---

[5] Lawless' counsel objected to these exhibits partway through the second day of the hearing, as well as an exhibit containing correspondence between Sadeck and Healey, on the grounds that they were hearsay and that the town had not called Estrella or Jussaume as witnesses that Lawless' counsel could cross-examine. Jun. 12 Hrg. Tr. 71-72 [#95-13]. The objection was overruled on the ground that Lawless could have subpoenaed the witnesses to testify. Id. at 75.

well as the next morning, Lawless had copied town files onto flash drives. Id. at 72-73. Finally,

he explained that Lawless' refusal to turn over the town's bank and financial software passwords

had made it challenging for the town to perform its financial obligations for approximately a

month and a half. Id. at 74-76. On cross-examination, Healey also testified that certain public tax

records had been improperly disposed of and that the Board had a policy that town employees

not work nights or weekends in the Town Hall. Id. at 94-100, 102.

Lawless testified over the second and third days of the hearing. Jun. 12 Hrg. Tr. [#95-13];

Jun. 22 Hrg. Tr. [#96]. By her account, when she began working as Freetown's Treasurer, she

inherited an ineffective staff and an inefficient system, and she received inadequate training. Jun.

12 Hrg. Tr. 14-38, 54-65 [#95-13]. She explained that, to make her office more efficient, she

implemented the Lockbox program, but that when she initially met with the bank and signed a

contract, she believed that it was only to test the program, not to fully implement it, and therefore

did not seek Board approval. Id. at 39-45. Although Lawless conceded that the Board "felt like

they were in the dark, that [she] was doing this without their permission," she explained that she

had moved forward with the implementation because Town Administrator Brown had told her

that the Board approved. Id. at 46-52. She noted further that, in the end, the Board had formally

approved the Lockbox program. Id. at 53.

As to the other charges, Lawless stated that, although she knew that her contract did not

include compensatory time, she had not known until the April 15, 2014 executive session that

she was not permitted to leave the Town Hall during work hours without requesting vacation. Id.

at 79-86. She also gave her own accounts of the circumstances surrounding the allegedly

improper disposal of town records and her failure to provide information to a town insurance

vendor. Id. at 100-04, 123-28. She acknowledged that she had instructed Thomas not to speak

with Estrella or Jussaume about her work and that, on March 24, 2015, she felt that Thomas was "going over [her] head" by asking Jussaume for advice, leading to the confrontation between them. Jun. 22 Hrg. Tr. 6-9, 16-19 [#96]. And, finally, she reiterated that she had taken town files home with her on the flash drives because she wanted to be able to continue her work from home, having been instructed not to come into work the next day, and that she refused to turn over the banking passwords because it would have violated Massachusetts law. Id. at 27-29, 36, 38. Much of her remaining testimony on direct examination was focused on the April 15, 2014 executive session. Jun. 12 Hrg. Tr. 78-147 [#95-13].

Following Lawless' testimony, Lawless' counsel and Town Counsel gave closing statements, and Town Counsel recommended that the Board not pursue the charges that Lawless had improperly disposed of town records in September 2014 and that she had taken vacation in June 2014 without advising the Board. Jun. 22 Hrg. Tr. 76-96 [#96]. The Board then began to deliberate, and Sadeck raised Lawless' history of interpersonal issues with Freetown employees. Id. at 98-104. Town Counsel responded by reminding Sadeck and the rest of the Board that their votes should be based only on the evidence presented during the hearing rather than on events that had transpired previously. Id. at 104. The Board then voted, without further deliberation or factual findings on any of the remaining charges, to sustain six of the eight charges against Lawless, finding that she had acted unprofessionally towards Freetown employees and vendors; failed to turn over the bank passwords to Healey; misled the Board regarding the Lockbox program; downloaded confidential town files onto flash drives; returned to the Town Hall despite instructions to remain home; and failed to provide pension information to a town insurance vendor. Id. at 105-08. Pacheco then moved to terminate Lawless, and the Board voted in favor. Id. at 115.

The Board sent Lawless a written notice of termination on June 22, 2015, and her termination became effective on June 26, 2015. Termination Letter [#96-11].

## III.    Discussion

### A.    *Libel*

Lawless' first claim alleges libel against the Board members based on their publication of Estrella's email by placing it into the public record as an exhibit at the disciplinary hearing. Am. Compl. ¶¶ 152-85 [#42]. Lawless identifies six allegedly defamatory statements in the email.[6] However, the libel claim is barred because the Board members were conditionally privileged to make the statements.

---

[6] The statements were:

(1) "[A]ll I could hear all day was Ms. Lawless socializing on the phone all day long, and shopping online for 'beads' for her jewelry making business," Am. Compl. ¶ 158 [#42];

(2) "I believe Ms. Lawless demonstrates paranoid behavior and has serious mood swings that could be associated as severe bipolar disorder or some other form of mental handicap," id. at ¶ 165;

(3) "[Lawless] made mention many times on how she remodeled one of her offices at another city/town and couldn't wait to 'paint our office with dollar signs.' She also made mention that she had bullet proof glass installed when she was a collector but that we wouldn't be getting that in Freetown[, and] that's why she moved her desk around the corner so we ([Jussaume and] myself) would 'be the first ones in the line of fire,'" id. at ¶ 169;

(4) "[I]t has crossed my mind and the mind of some of my other coworkers that Ms. Lawless will show up at Town Hall with that gun her husband bought her," id. at ¶ 171;

(5) "I witnessed Ms. Lawless retrieve the Workers Compensation Binder off the top of the filing cabinet, that Ali Golz had left with her, per her request a few days earlier, and put it in her briefcase bag. She had often taken materials home with her but this time I felt very uneasy because I thought there might have been insurance quotes in that binder, and seeing that her husband was an insurance salesman, to me there was a conflict of interest or an ethics violation," id. at ¶ 174; and

(6) "[I]n March 2014, Ms. Lawless had somehow been able to take pretty much the whole month off – without putting in for sick/vacation time," id. at ¶ 177.

"A person is conditionally privileged to publish a defamatory statement if the publisher and the recipient share a common interest in the subject, and the statement is reasonably calculated to further or protect that interest." Lawless v. Estrella, 99 Mass. App. Ct. 16, 22 (2020) (citing Downey v. Chutehall Constr. Co., 86 Mass. App. Ct. 660, 665 (2014)). The privilege is particularly important "in the context of workplace investigations" to "ensure that employees are able to report both actual and suspected misconduct without fear of being held liable for claims of defamation. Accordingly, the conditional privilege will protect the disclosure of otherwise defamatory information 'when the publication is reasonably necessary to serve the employer's legitimate interest in the fitness of an employee to perform his or her job.'" Id. at 23 (quoting Sovie v. North Andover, 742 F. Supp. 2d 167, 174 (D. Mass. 2010)).

In this case, the Board members published the email, which was obtained in response to an inquiry regarding employees' working relationships with Lawless, as an exhibit at Lawless' disciplinary hearing which concerned the same issue. This clearly falls within the ambit of conditionally privileged communications, where the Board functions as Freetown's executive branch and has a direct interest in monitoring town employee performance.

Lawless contends that, even if publication of the email was conditionally privileged, the Board members lost the privilege through abuse. Pl's Opp. 32 [#115]. The conditional privilege can be lost through "unnecessary, unreasonable or excessive publication of the defamatory matter" or by publication of defamatory information with "actual malice." See Galvin v. New York, N.H. & H.R. Co., 341 Mass. 293, 297-98 (1960). It can also be lost if the defendants knew that the information was false or had no reason to believe it to be true. See Sklar v. Beth Israel Deaconess Med. Center, 59 Mass. App. Ct. 550, 558 (2003). The burden of proving abuse of the

privilege is on the plaintiff. See Dragonas v. Sch. Comm. of Melrose, 64 Mass. App. Ct. 429, 438 (2005).

Here, there is no evidence that the email was unnecessarily, unreasonably, or excessively published. The email did include Estrella's opinions that may have had no place in the disciplinary hearing, but the opinions are not actionable. In any event, the disciplinary hearing would have taken place in executive session, but Lawless "elected to have th[e] hearing conducted in the public eye, in open session." Jun. 8 Hrg. Tr. 9 [#95-9].

As to malice, "it is not enough to show that the defendant merely disliked the plaintiff or that such animosity was *part of* the defendant's motivation." Dragonas, 64 Mass. App. Ct. at 439 (emphasis added). "Instead, the conditional privilege is lost only 'if the publication is not made *chiefly* for the purpose of furthering the interest which is entitled to protection.'" Id. (quoting Ezekiel v. Jones Motor Co., 374 Mass. 382, 390 n.4 (1978)) (emphasis original). Where the email was gathered as part of the town's collection of evidence regarding Lawless' working relationships and where the Board members intended the hearing to be conducted in executive session and conducted it in open session only at Lawless' request, the court concludes that— whatever ill will the Board members may have harbored towards Lawless—their primary motivation for publication of the email was to offer evidence regarding her performance as Treasurer and her working relationships with her coworkers in the disciplinary hearing, which are protected interests.

Finally, Lawless has not met her burden of demonstrating that the Board members knew that Estrella's statements were false or had no reason to believe them to be true. Lawless focuses largely on the fact that none of the Board members verified any of Estrella's allegations, but "[i]mposing a duty of affirmative verification is not consistent with the conditional privilege. The

privilege is applicable if the person making the allegedly false and defamatory statement views the statement as reasonably grounded." <u>Fowler v. Sohio Oil Co.</u>, No. 88-2533-WD, 1990 WL 320042, at *5 (D. Mass. Jan. 9, 1990) (citing <u>Foley v. Polaroid, Corp.</u>, 400 Mass. 82, 95 (1987)).

Because the court concludes that the Board members' publication of email was conditionally privileged and that they did not lose the privilege through abuse, summary judgment is warranted as to Count I.[7]

B.    *42 U.S.C. § 1983*

Lawless' second claim alleges a violation of her due process rights under section 1983 against the Board members and Freetown. Am. Compl. ¶¶ 186-224 [#42]. Specifically, she claims that her disciplinary hearing was procedurally inadequate because (1) the town's witnesses were not sworn in; (2) the Board admitted hearsay evidence; (3) the outcome of the disciplinary was predetermined; and (4) the Board did not afford her a constitutionally adequate post-termination hearing. Pl's Opp. 2-26 [#115].

---

[7] To the extent that Lawless' libel claim is based on the second, fourth, and fifth allegedly defamatory statements, the claim is also barred by collateral estoppel. Under Massachusetts law, the doctrine of collateral estoppel applies when "(1) there was a final judgment on the merits in the prior adjudication; (2) the party against whom estoppel is asserted was a party (or in privity with a party) to the prior adjudication; (3) the issue in the prior adjudication is identical to the issue in the current adjudication; and (4) the issue decided in the prior adjudication was essential to the earlier judgment." <u>Green v. Town of Brookline</u>, 53 Mass. App. Ct. 120, 123 (2001); <u>see also</u> <u>Alba v. Raytheon Co.</u>, 441 Mass. 836, 842 (2004). Plaintiff's action against Estrella in state court alleged libel based on the same six statements. Superior Ct. Order [#96-13]. A Superior Court judge granted summary judgment in favor of Estrella, <u>id.</u> at 4-6, and the Massachusetts Appeals Court affirmed. <u>Lawless</u>, 99 Mass. App. Ct. at 26. The Appeals Court agreed with the Superior Court that the second statement "was unambiguously a statement of opinion, and not fact, and was therefore not actionable," and found that the fourth and fifth statements were expressions of opinion when taken in the context of the email as a whole. <u>Id.</u> at 20-22. Accordingly, since the decision in the state court is a final judgment on the merits, Lawless was party to the prior adjudication, and the issue of whether these statements are defamatory is identical in both proceedings, Lawless' libel claim based on these three statements, which have been determined to be statements of opinion, is barred by collateral estoppel.

To prevail on a procedural due process claim under section 1983, a plaintiff must demonstrate (1) that she has been deprived of a protected interest and (2) that the defendants deprived her of that interest without due process. Perez-Acevedo v. Rivero-Cubano, 520 F.3d 26, 30 (1st Cir. 2008). It is uncontested that Lawless had a protected property interest in her continued employment under the terms of her employment contract. She therefore could not be terminated without due process, including a hearing before her termination. Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985) (holding that due process "requires 'some kind of a hearing' prior to the discharge of an employee who has a constitutionally protected property interest in his employment").

"The essential requirements of due process . . . are notice and an opportunity to respond. The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement." Id. at 546. "Pre-termination and post-termination proceedings are not evaluated for constitutional adequacy in isolation from each other; a reviewing court studies the totality of the process received in light of the factual record to determine if the procedural due process was sufficient." Senra v. Town of Smithfield, 715 F.3d 34, 39 (1st Cir. 2013). Here, because there was no post-termination hearing, the court considers whether the pre-termination hearing alone satisfied due process. See Cassim v. Bowen, 824 F.2d 791, 798 (9th Cir. 1987) ("The general rule is that the less the predeprivation process, the greater must be the post-deprivation process").

Neither pre-termination nor post-termination hearings need satisfy all the requirements of due process attendant to court proceedings. See Senra, 715 F.3d at 39 (citing Chmielinski v. Massachusetts, 513 F.3d 309, 316 (1st Cir. 2008)) ("Writing about pretermination proceedings, we have observed that 'a termination hearing is not a court of law.' That observation holds true

for post-termination hearings"). And the First Circuit has stated that, as to pre-termination hearings, "there is no requirement that the hearing officer be impartial; indeed, the terminating employer may preside." Chmielinski, 513 F.3d at 318. Lawless argues that, while that may be true where post-termination proceedings are provided, a biased decisionmaker is procedurally inadequate where she was afforded only a pre-termination hearing. However, the court need not determine whether a neutral decisionmaker is required where there is not post-termination hearing because a reasonable jury could find that, in this case, the outcome of the hearing was predetermined and therefore violated Lawless' due process rights.

Even where there is no requirement that the individuals adjudicating a pre-termination hearing be unbiased, the lack of impartiality may at some point become "so severe as to interfere with due process at the hearing itself." Id. Due process requires that the employer "be willing to listen. Otherwise, the 'opportunity to respond' required by Loudermill is no opportunity at all." Ryan v. Illinois Dep't of Children & Family Servs., 185 F.3d 751, 762 (7th Cir. 1999). Here, there is evidence for a reasonable jury to find that the Board had made up its mind to terminate Lawless prior to the hearing and that no evidence she presented would have changed the result.

First, at the April 2, 2014 executive session—more than a year before Lawless' disciplinary hearing—the Board members agreed that they did not trust Lawless. Apr. 2, 2014 Exec. Session Minutes [#95-17]. After Pacheco suggested that the Board hold a disciplinary hearing, Sadeck stated that Lawless was appointed, not elected, and that "is the end of story." Id. A reasonable jury could find that Sadeck meant that the Board should terminate Lawless without the benefit of a disciplinary hearing. At another executive session later that month, Baumgartner said that he would "never get past the trust thing" and expressed his belief that Lawless "was not truthful" with the Board. Id.

20

Then, at the November 17, 2014 executive session, Pacheco stated that she did not trust Lawless and believed that Lawless had taken advantage of Healey to get the password to Estrella's computer. Baumgartner said that, in his opinion, Lawless "should be gone." Nov. 17, 2014 Exec. Session Minutes [#95-21].

Next, at the at the April 7, 2015 executive session, the Board members voted unanimously to hold a "termination hearing" for Lawless. Apr. 7, 2015 Exec. Session Minutes [#96-4]. During the same session, Town Counsel advised the Board that they should promptly hire an interim Treasurer because the "relationship [with Lawless] needs to be separated." Id.

Finally, during the disciplinary hearings, a bystander overheard Sadeck and Baumgartner discussing the hearing and heard one of them ask "why do we have to do this dog and pony show, let's just vote to terminate her and get it over with." Higgins Aff. [#109-23]. Once the hearing was over, the Board then voted to terminate Lawless without deliberating or making any factual findings as to the majority of the charges against her. Jun. 22 Hrg. Tr. 105-08 [#96].

 Based on these facts, a reasonable jury could find that the basis for the Board members' votes was unrelated to the evidence presented at the hearing, that no evidence that Lawless could have introduced would have made a difference to the outcome, that the outcome of the hearing was therefore predetermined, and that Lawless accordingly was not afforded a true "opportunity to respond." See Loudermill, 470 U.S. at 546. Summary judgment is therefore inappropriate.

1.    Parratt-Hudson Doctrine

The Board members argue that even if the pre-termination hearing was procedurally inadequate, Lawless' claim is barred by the Parratt-Hudson doctrine. Defs' Mem. 20-21 [#100]. The Parratt-Hudson doctrine holds that "if a state provides adequate post-deprivation remedies—either by statute or through the common-law tort remedies available in its courts—no claim of a

violation of procedural due process can be brought under § 1983 against the state officials whose random and unauthorized conduct caused the deprivation." Lowe v. Scott, 959 F.2d 323, 340 (1st Cir. 1992). See Parratt v. Taylor, 451 U.S. 527 (1981); Hudson v. Palmer, 468 U.S. 517 (1984). The doctrine does not apply, however, when "[t]he State delegated to [the government entity] the power and authority to effect the very deprivation complained of . . . and also . . . the concomitant duty to initiate the procedural safeguards." Zinermon v. Burch, 494 U.S. 113, 138 (1990). In this case, the exception is inapposite: by their own admission, the Board members terminated Lawless pursuant to a broad statutory grant of authority that delegates to the town the responsibility to enact appropriate procedural protections. Pl's SOF Resp." ¶ 13 [#107]; see also 2010 Mass. Acts ch. 122, § 1.

        2.        Qualified Immunity

The Board members also suggest that they are entitled to qualified immunity. Defs' Mem. 21-24 [#100]. "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Courts evaluate claims for qualified immunity under a two-part test: "(1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right; and (2) if so, whether the right was 'clearly established' at the time of the defendant's alleged violation." Maldonado v. Fontanes, 568 F.3d 263, 269 (1st Cir. 2009).

Here, the court has determined that a reasonable jury could reach the conclusion that Lawless' due process rights were violated. The Board members argue that, even if that were the case, it was not clearly established that the Board members were required (1) to recuse

themselves from the disciplinary hearing because they had previously addressed her performance issues, or (2) to provide Lawless with all of the due process protections characteristic of court proceedings. Defs' Mem. 23 [#100]. But these arguments miss the main mark of Lawless' allegations: that the disciplinary hearing was a sham and that the Board members had made up their minds to terminate her long before the hearing began.

"The basic requirements of due process have long been settled" and "an objectively reasonable official would indubitably have known that depriving plaintiff of . . . a meaningful opportunity to respond . . . violated the fourteenth amendment." Collins v. Marina–Martinez, 894 F.2d 474, 481 (1st Cir. 1990). The Board members are therefore not entitled to qualified immunity.

       C.    *Massachusetts Declaration of Rights and Claim of Ultra Vires Acts*

At the hearing on the Motion for Summary Judgment [#93], Lawless conceded judgment as to the Massachusetts Declaration of Rights (Count III) and ultra vires acts (Count IV) claims. Elec. Clerk's Notes [#119]. Accordingly, Defendants are granted summary judgment as to these two claims.

       D.    *Breach of Contract*

Lawless' final claim is that Freetown breached her employment agreement by terminating her without justification or cause.[8] Am. Compl. ¶¶ 235-37 [#42]. "To prevail on a claim for breach of contract [under Massachusetts law], a plaintiff must demonstrate that there was an agreement between the parties; the agreement was supported by consideration; the

---

[8] The Amended Complaint [#42] also alleges that Freetown breached the employment contract by not increasing Lawless' salary after a year of continuous employment. Am. Compl. ¶¶ 233-34 [#42]. However, neither side addressed this claim in the briefing before this court.

plaintiff was ready, willing, and able to perform his or her part of the contract; the defendant

committed a breach of the contract; and the plaintiff suffered harm as a result." Bulwer v. Mount

Auburn Hosp., 473 Mass. 672, 690 (2016) (citing Singarella v. Boston, 342 Mass. 385, 387

(1961)).

It is uncontested that an agreement existed between Lawless and Freetown. As described

above, Lawless' employment agreement specified that Freetown employed her as Treasurer for a

three-year term running from July 1, 2013 to June 20, 2016. Employment Agreement 1 [#95-4].

It further provided that, after an initial six-month probationary period, Lawless was terminable

only for "cause." Id. The standard for "just cause" under Massachusetts law is set out in Klein v.

President and Fellows of Harvard College, which states that:

> Terms such as "just cause" and like phrases have been construed in similar or analogous
> contexts as meaning: "[T]here existed (1) a reasonable basis for employer dissatisfaction
> with a new employee, entertained in good faith, for reasons such as lack of capacity or
> diligence, failure to conform to usual standards of conduct, or other culpable or
> inappropriate behavior, or (2) grounds for discharge reasonably related, in the employer's
> honest judgment, to the needs of his business. Discharge for a 'just cause' is to be
> contrasted with discharge on unreasonable grounds or arbitrarily, capriciously, or in bad
> faith."

25 Mass. App. Ct. 204, 208 (1987) (quoting G M Employment Serv., Inc. v. Commonwealth,

358 Mass. 430, 435 (1970)). "As the existence of just cause is an affirmative defense,

'commonly a question of fact, it rarely can be ruled as matter of law that it has been sustained.'"

Goldhor v. Hampshire Coll., 25 Mass. App. Ct. 716, 722 (1988) (quoting Chaplain v. Dugas, 323

Mass. 91, 93 (1948)). In addition, Lawless' employment agreement stated that "the Board

recognize[d] the principle of progressive discipline and w[ould] afford [Lawless] prior notice of

shortcomings and an opportunity to correct the same where reasonably possible." Id. at 1-2.

Freetown argues that the "cause" standard requires only that the employer have a

legitimate reason to discharge an employee and that because Lawless "yelled at a staff member

and chased her up a flight of stairs" and "snuck into Town Hall after being directed not to come in and downloaded confidential information onto flash drives and took them home without permission," her conduct is clearly cause for termination Id. However, Freetown's argument advances contested inferences as unchallenged and assumes that the factfinder is compelled to agree with its construction of disputed events. The law is otherwise. Griggs-Ryan, 904 F.2d at 115.

First, there is a genuine dispute as to whether Lawless' conduct toward Thomas was so inappropriate and unprofessional as to justify her termination for cause. Although a jury could find that Lawless' behavior constituted just cause, it could equally find that termination was a disproportionate reaction and that, given the employment agreement committing Freetown to use progressive discipline "where reasonably possible," Lawless should have been disciplined—such as with a written warning or a suspension—instead.

Similarly, a genuine dispute exists as to whether Lawless was permitted to take town files home with her. Freetown claims that Lawless "snuck into Town Hall" at the time that Lawless downloaded the files onto flash drives, but at that time, she had not yet been placed on administrative leave and had only been told through a message passed on by the Board's administrative assistant not to come into the Town Hall the next day. Pl's SOF Resp. ¶¶ 63-64 [#107]. According to Lawless, she downloaded the files—something that she had done on prior occasions without issue—so that she would be able to continue her work from home. Id. at ¶ 65; Pl's Opp. 21-22 [#115]. Nor did the town have any policy against such conduct. Pl's Opp. 21-22 [#115].

The other bases for Lawless' termination are also disputed. Freetown claims that Lawless' refusal to turn over the banking passwords constitutes cause, but Lawless counters that

she had a statutory obligation not to relinquish the passwords until a new Treasurer had been appointed. Pl's SOF Resp. ¶ 82 [#107]; see also G. L. c. 41, § 35. Regarding the town's allegation that Lawless "misled" the Board with respect to the Lockbox program, Lawless disputes that she intentionally misrepresented the agreement with the bank to the Board and claims that she believed she had Board authorization. Pl's Opp. 31 [#115]. Given that the Board went on to ratify the contract shortly thereafter, a reasonable jury could find that this does not constitute cause for termination. Finally, the town's allegation that Lawless "failed, refused, and neglected" to provide pension information to a town insurance vendor is not supported by any evidence in the summary judgment record.

Considering all the evidence, the court finds that there is a factual question for the jury to decide whether Freetown had just cause to terminate Lawless. Summary judgment is therefore denied.

## IV.   Conclusion

For the foregoing reasons, Freetown and the Board member's joint Motion for Summary Judgment [#93] is GRANTED as to Counts I, III and IV, and DENIED as to Counts II and V.

IT IS SO ORDERED.

March 9, 2021                                    /s/ Indira Talwani
                                                 United States District Judge